ARTHUR J. H. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9914.    Promulgated October 24, 1946.

*D. S. Holmes, Esq.*, for the petitioner.
*Maurice S. Bush, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The question which arises from the facts above found, is whether the petitioner was throughout 1943 a bona fide resident of Greenland under the language of section 116 (a) of the Internal Revenue Code as amended by section 148 (a), Revenue Act of 1942,[1] so as to be entitled to exemption from taxes on his earnings in Greenland.

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME. [As amended by sec. 148 (a), Revenue Act of 1942.]

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—

(1) FOREIGN RESIDENT FOR ENTIRE TAXABLE YEAR.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individuals shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

Prior to 1943 and the amendment of the statute, the test as to taxability of such income was whether the taxpayer was, for more than six months of the year, a bona fide nonresident of the United States. Under that language it was long the view of the Bureau of Internal Revenue, in substance, that residence in a foreign country was not necessary to the exemption from taxation. Mere physical absence from the United States was said to be sufficient. This view was in accord with that of the court in *Commissioner* v. *Fiske's Estate*, 128 Fed. (2d) 487; certiorari denied, 317 U. S. 635. The Revenue Act of 1942 plainly imposed a new test, bona fide residence in a foreign country.[2] As shown by the Senate Finance Committee Report, the criteria

[2] The legislative history of the change is as follows: Section 148 (a) of the Revenue Act of 1942 as enacted by the House of Representatives repealed section 116 (a). The House Committee Report, on the subject, says:

"Under section 116 (a) of the Internal Revenue Code, a citizen of the United States residing outside the United States more than six months during the taxable year is exempt from tax on his earned income from such outside sources, except in the case of such income paid by the United States or any of its agencies. The repeal of this provision of the bill will not only serve revenue needs but will also remove the existing unjust discrimination favoring individuals receiving their compensation for services abroad from nongovernmental sources." [C. B. 1942-2, p. 412.]

The Senate did not agree with the repeal. The Report of the Committee on Finance, C. B. 1942-2, pp. 548, 549, reads:

"Under section 116 (a) of the Internal Revenue Code a citizen of the United States residing outside the United States more than six months during the taxable year is exempt from tax on his earned income from sources outside of the United States, except in the case of income paid by the United States or any of its agencies. This provision of the present law has suffered considerable abuse, in the case of persons absenting themselves from the United States for more than six months simply for tax-evasion purposes. To stop this abuse, the House bill repealed section 116 (a).

"From cases brought to your committee's attention, the complete elimination of this section would work a hardship in the case of citizens of the United States who are bona fide residents of foreign countries. For example, many employees of American business in South America do not return to the United States for periods of years. Such persons are fully subject to the income tax of the foreign country of their residence. Your committee has adopted a provision which it is believed will effectively terminate the abuse of this section but at the same time will not unduly penalize our citizens who are bona fide residents of a foreign country during the entire taxable year their earned income from sources without the United States will be exempt. * * *

"Section 134 of the House bill, which corresponds to this section, would repeal subsection (a) of section 116 of the Code under which a citizen of the United States, bona fide nonresident of the United States for more than six months during the taxable year, was exempt from tax on earned income from sources without the United States.

"In lieu of the repeal of this section, your committee recommends that subsection (a) be amended so as to change the test there provided to one of residence in a foreign country or countries during the entire taxable year. In the application of such provision, the tests as to whether a taxpayer is a resident of a foreign country or countries will be those generally applicable in ascertaining whether an alien is a resident of the United States. Vacation or business trips to the United States during the taxable year will not necessarily deprive a taxpayer, otherwise qualified, of the exemption provided by this section. This amendment is applicable to taxable years beginning after December 31, 1942, and the present law is retained for taxable years beginning prior to January 1, 1943." [C. B. 1942-2, p. 591.]

The Conference Committee Report (C. B. 1942-2, p. 708) provides:

"Amendment No. 128: Section 134 of the House bill struck out section 116 (a) of the Code, under which a citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, is exempt from tax on earned income from sources without the United States. The amendment retains section 116 (a), but changes the test, effective with respect to taxable years beginning after December 31, 1942, to one of residence in a foreign country or countries during the entire taxable year. * * * The House recedes."

as to whether a taxpayer is a resident of a foreign country were to be, generally, those applicable in ascertaining whether an alien is a resident of the United States. *Commissioner* v. *Swent*, 155 Fed. (2d) 513. Moreover, that idea is formulated into Regulations 111, section 29.116–1, as follows:

EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—For taxable years beginning after December 31, 1942, there is excluded from gross income earned income in the case of an individual citizen of the United States provided the following conditions are met by the taxpayer claiming such exclusion from his gross income: (*a*) It is established to the satisfaction of the Commissioner that *the taxpayer has been a bona fide resident of a foreign country* or countries throughout the entire taxable year * * *. Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined *in general* by the application of the principles of sections 29.211–2, 29.211–3, 29.211–4, and 29.211–5, relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual. [Italics supplied.]

Regulations 111, section 29.211–2, referred to in section 29.116–1, provides in part:

An alien actually present in the United States *who is not a mere transient or sojourner* is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his *intentions with regard to the length and nature of his stay*. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States *for a definite purpose* which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien *makes his home temporarily* in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. [Italics supplied.]

It is not contended by the petitioner that the regulations go beyond the statute, and, since both parties quote, discuss, and specifically rely upon the various concepts set forth in section 29.211–2, *supra*, the only difference between them appears to lie in the interpretation of the language of that regulation. With congressional intent plain, and expressed in the regulation, and both parties specifically depending upon its text, we examine the statute and regulation and apply them to petitioner's stay in Greenland. No contention is made by the respondent that bona fide foreign residence must, under the statute, be established to the satisfaction of the Commissioner, or by the petitioner that the determination was arbitrary. We consider the matter, therefore, as submitted to us for interpretation of the expression "bona fide resident of a foreign country" on the facts shown.

It is plain from examination of the legislative history of section 148 (a), Revenue Act of 1942, that Congress felt that under the former law there had been "unjust discrimination favoring individuals receiving their compensation for services abroad from nongovernmental sources"; that it had "suffered considerable abuse," but that repeal would work a hardship upon citizens who were bona fide residents of foreign countries, such as persons employed in foreign countries "for periods of years." It was noted that "Such persons are fully subject to the income tax of the foreign country of their residence." Therefore the old law was not repealed, but the new law, in the words of the Conference Committee report, "changes the test" to bona fide residence in foreign countries instead of nonresidence in the United States. Clearly, the idea was associated with unjust duplication of income taxes upon American citizens abroad.

As we set forth in *Estate of W. M. L. Fiske*, 44 B. T. A. 227 (reversed, *Commissioner* v. *Fiske's Estate, supra*) : "Residence is a variable and elastic term. Its meaning generally depends upon the context and the purpose of the statute in which it is used." A multitude of cases have construed it, but under circumstances and statutes so diverse that fair interpretation for this case can not be found in any sited to us, or discovered. None is based upon the present statute, which, as above noted, contains a concept wholly outside the former provision. Obviously, a connotation to be given the word under some other law, for example in a case involving bankruptcy jurisdiction, can be of no real help here; and emphasis may not soundly be based upon the time element alone, or alone upon any concept of "home" established, even though for a temporary period. The object of Congress in this ptaricular expression is the subject of our search. "Bona fide" is perhaps more significant than "resident" here; certainly it is not to be given less importance than the latter term because of connotation given "resident" under statutes designed to cover situations and objectives of no comparison with the statute here at hand. So we derive scant comfort in this problem from the many variations of meaning of "resident," and seek to effectuate here the intent of Congress.

In the first place, although counsel have not suggested or briefed the thought, we find of prime importance the legal conditions under which petitioner worked in Greenland. We have, therefore, consulted the "Agreement Relating to the Defense of Greenland," signed on April 9, 1941, between the United States of America and the Kingdom of Denmark, of which Greenland is a colony. This agreement appears in Vol. 55, Part 2, of the United States Statutes at Large, p. 1245. We take judicial notice thereof. It is obvious that it was under this

agreement or treaty that the United States Army constructed the bases upon which petitioner did work. We find no other agreement or treaty authorizing such construction of bases. The agreement in general first provides that the United States "shall have the right to construct, maintain and operate such landing fields, seaplane facilities and radio meteorological installations as may be necessary * * *." Articles VI and VIII provide as follows:

### ARTICLE VI

The Kingdom of Denmark retains sovereignty over the defense areas mentioned in the preceding articles. So long as this Agreement shall remain in force, the Government of the United States of America shall have exclusive jurisdiction over any such defense area in Greenland and over military and civilian personnel of the United States, and their families, as well as over all other persons within such areas except Danish citizens and native Greenlanders, it being understood, however, that the Government of the United States may turn over to the Danish authorities in Greenland for trial and punishment any person committing an offense within a defense area, if the Government of the United States shall decide not to exercise jurisdiction in such case. The Danish authorities in Greenland will take adequate measures to insure the prosecution and punishment in case of conviction of all Danish citizens, native Greenlanders, and other persons who may be turned over to them by the authorities of the United States for offenses committed within the said defense areas.

### ARTICLE VIII

All materials, supplies and equipment for the construction, use and operation of the defense establishment and for the personal needs of military and civilian personnel of the United States, and their families, shall be permitted entry into Greenland free of customs duties, excise taxes, or other charges, and the said personnel, and their families, shall also be exempt from all forms of taxation, assessments or other levies by the Danish authorities in Greeland.

We see, therefore, that, though the Kingdom of Denmark retained sovereignty over the defense areas, the Government of the United States had exclusive jurisdiction over such defense areas and over military and civilian personnel of the United States and all other persons within such areas except Danish citizens and native Greenlanders, though the Government of the United States could turn over to the Danish authorities persons committing offenses if it decided not to exercise jurisdiction in such cases. We see further that the petitioner was "exempt from all forms of taxation, assessments or other levies by the Danish authorities in Greenland." Under these circumstances, we consider it clear that the petitioner should not be considered to have become a resident of Greenland, within the intent and purpose of section 116 (a) as amended. He had not left the jurisdiction of the United States, its power, or its protection, nor become subject to taxation, assessment, or levy by the Danish authori-

ties in Greenland. To hold, under such circumstances, that the petitioner had become a "resident" of Greenland, within the intendment of section 116 (a) of the Internal Revenue Code, as amended by section 148 (a) of the Revenue Act of 1942, would be to ascribe to the word "resident" some common connotation in very unusual circumstances, in spite of the fact that the multitude of cases disclose that there is no settled meaning for the word under all circumstances, or even under ordinary circumstances, the situations and cases being too many and too diverse for the word to mean a great deal beyond its use under the particular statute or under the particular circumstances. Its "meaning has been variously shaded according to the variant conditions of * * * application." *Baker* v. *Conway*, 108 So. 18. When we consider also the intent expressed by the Senate, which originated the present law, and the reference to hardship of bona fide residents of foreign countries and those subject to their income tax, it would, in our view, be unreasonable to hold that Congress ever intended to relieve citizens of the United States from its income tax merely because they were working within the confines of a foreign country, when they were not subject to its law of income tax, or otherwise, and remained subject to that of the United States.

Indeed, the expression, "the Government of the United States of America shall have exclusive jurisdiction over any such defense area in Greenland and over military and civilian personnel of the United States * * * within such areas," constitutes reservation of jurisdiction under the general income tax law of the United States, more particularly when taken in connection with the language of Article VIII, exempting such military and civilian personnel from all forms of taxation, assessments or levies by the Danish authorities. The petitioner is seen to be a citizen of the United States and within its jurisdiction. "The law imposes a tax upon the net income *of all persons within its jurisdiction* * * *." Mertens Law of Federal Income Taxation, § 45.03. The power of the United States to tax "embraces all the attributes which appertain to sovereignty in the fullest sense. * * * the power to tax was limited by the capacity of the taxing government to afford that benefit and protection which is the true basis of the right to tax and which causes, therefore, taxation where such capacity to confer benefit and afford protection does not exist to be a mere arbitrary and unwarranted burden." *United States* v. *Bennett*, 232 U. S. 299 (306, 307).

Considering the subject of the statute as expressed in the committee reports, the highly unusual situation (it is perhaps unique in history that one country has voluntarily surrendered jurisdiction over a portion of its territory and its citizens thereof to a friendly power, for a

limited time, its sovereignty being expressly retained and recognized) and the remarkable absence of a generally applicable meaning of the word "resident," we consider that the petitioner is not shown to have become a resident of Greenland, within the meaning of section 116 (a) as amended.

In addition, after reviewing carefully the language of the statute, the regulation and the authority cited, we have come to the conclusion, on more general grounds, that the petitioner was not within the ambit of the intent of Congress in section 116 (a) as amended. Exemption from taxation is sought. The taxing power is not relinquished unless intent to do so is expressed in clear and unambiguous terms. *Wright* v. *Georgia R. R. & Banking Co.*, 216 U. S. 420. Exemptions are not based on inference. *Pacific Co., Ltd.* v. *Johnson*, 285 U. S. 480.

He is not shown to be in the position of suffering the hardship in the mind of the Senate Committee on Finance, when it speaks of those subject to income tax abroad; rather, the petitioner's failure to disclose any financial subjection to the law of Greenland and the whole situation disclosed as to his working there under Army regulations seem to indicate that, in seeking exemption from income taxes of the United States, he seeks the "unjust discrimination favoring individuals receiving their compensation for services abroad," in the words of the House Committee. The result of the congressional action was not to repeal the old law and subject all nonresident American citizens to tax, but, on the other hand, it was not to exempt from income tax all citizens who might be abroad, though they might have good reason so to be. We think that neither congressional intent nor effect was to permit the petitioner, temporarily in Greenland, under clearly uncertain tenure of employment, and still to at least a large degree under control of the United States, to secure exemption from income tax on his earnings. His is not the status, in our view, of those whom the Senate sought to do justice, in opposing repeal of the former law. Within the new test, viewed in the light of the attitude of Congress, we may not reasonably regard him as having shown establishment of a residence for the purpose of section 116 (a) as amended, and exemption from income tax, and in our opinion he did not become "a bona fide resident" of Greenland.

Under the regulation he can not be said to have had "no definite intention as to his stay." Though there was some indefiniteness as to time, he definitely intended *not* to stay more than temporarily. His was no "mere floating intention" to return to the United States; it was fixed and definite, except as to time. True, under the regulation, one who has a purpose of such nature that an extended stay may be necessary for its accomplishment, and to that end makes his home tempora-

rily in the foreign country, becomes a resident there, but we think it may not soundly be said that the petitioner here had such purpose, or made such a home. The construction job required extended time, but that does not mean that petitioner's purpose required the same. The regulation considers the "nature of his stay." The nature of his stay, and his purpose were plainly to work, by the hour, and earn money, and he could not have been forced to remain longer than he wished, and could be discharged, without cause, at any time. Thus he is seen to intend essentially to remain only until discharged, or until he wished to quit. We are here concerned with the year 1943. On February 25, 1943, he contracted to work for six months at most, and that both he and the contractor considered it uncertain whether he would work even for that period is clear from the provision for $500 bonus if he did so (or remained until the end of the work, whichever was the shorter period). The six-month period would expire leaving more than one-third of the taxable year, an indication that on February 25, 1943, he did not expect to remain "during the entire taxable year." So far as the taxable year is concerned, no extended stay is shown to be in the mind of petitioner or contractor. It would be unrealistic to ascribe to the workman the same purpose, requiring the same time, as the entire construction project. He did remain in Greenland about two years, and he did, in the beginning, have some intent, subject to the contractual provisions, to continue work until completion of the project. Yet, he was employed "for such period as the contractor desires, not exceeding one year," and had a right to return transportation to Duluth, if discharged for any cause other than failure or refusal to work, insubordination or improper work, or false representation of no criminal record (under the second contract) and under the first, if he worked as long as desired by the contractor. His return transportation was, in fact, furnished. His contracts provided for payment in New York, not less often than once a week, and the second was subject to the laws of New York. He was subject to the regulations prescribed by the Army officer in charge, and was not permitted to leave the Army bases. Indeed, the petitioner's testimony that, after completion of the work under the contract, "there would be more jobs and I would follow right along in line * * * expected to continue to work wherever their [the company's] work was," taken with the fact that he knew of no other work "up there that they [the contractors] expected to do," and his consideration of the later offer of work in Bermuda, indicates plainly, we think, that he was, and considered himself, transitory in Greenland, with no intent to become a resident of that country. On the second contract, over his signature he was referred to as of Duluth, Minnesota, though he claims at that time to have been

a resident in Greenland almost a year. We think he considered himself as so described, considered Duluth his home, and that he was only sojourning for a time away from it. He was careful to secure transportation back to that city. For a man with a family and home in Duluth, but living in barracks in Greenland, and not permitted to leave the base where he was working, with subsistence and even some items of clothing provided, intending to work wherever necessary with the company, we do not consider that the facts shown disclose taking up bona fide residence in Greenland, within the intent and purpose of the statute here interpreted, requiring bona fide residence in that country.

It is suggested that there may be analogy in cases involving deductions allowed for business expenses incurred by a taxpayer while "away from home in the pursuit of a trade or business" under section 23 (a) (1) of the code. After consideration, we find no helpful comparison. That statute involves a deduction; the one here involves an exemption from income taxation. Such diversity in statute causes cases on section 23 (a) (1) (A) to be no more helpful than we have above because of difference in statutes, found the great number of cases defining "resident." There may have been some analogy between section 116 (a) as construed prior to amendment by section 148 (a), for the construction thereof was in effect that if a person was away from the United States he was not to be taxed. In other words, he was away from his home in a national sense, and it might conceivably have been logical, at that time, to hold that he was therefore away from his home under section 23 (a) (1), and therefore to be allowed deduction of business expenses incurred. But section 148 (a) very affirmatively changed that situation, in effect, by saying that to be "away from home," nationally speaking, was no longer sufficient. The taxpayer seeking exemption must establish a positive residence in a foreign country. In short, under the present statute one might be away from home in a foreign country on business within section 23 (a) (1) (A) but have established no residence at all abroad and, therefore, not be entitled to tax exemption. The holding here that there is no tax exemption because of no residence established does not mean that the petitioner was away from home for business expense deduction purposes. Moreover, the record shows that petitioner's expenses, both of transportation and living, were paid by the employer. Under *Commissioner* v. *Flowers*, 326 U. S. 465, the deduction would depend upon whether he was away from his principal place of business, which was in Greenland, and he could not have deducted expenses of transportation to and from Duluth. But it does not follow that his home was

not in Duluth, even in that case, and certainly not that his residence was not there, in the present matter of tax exemption. The *Flowers* case, in our view, is hostile to any view that there is analogy between the present question and that as to business expense away from home. The petitioner's business expense, to be allowable, must have been attributable to the employer's business, and that was in Greenland, so his residence in Duluth would be immaterial to that question. Cf. *S. M. R. O'Hara*, 6 T. C. 841.

Mere temporary work in Greenland, under the facts herein involved, is not sufficient to establish residence, though continued for the periods here shown. We find no error in the determination of the deficiency. That a different determination had been made for 1942 is not important, considering the change in statute and test. The petitioner on brief concedes that the determination of deficiency for 1942 refers to section 116 (a) prior to the 1942 amendment.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

Leech, *J.*, dissenting: The majority seems to rest its conclusion to a large extent upon the fact that the income of petitioner, received in Greenland for services there rendered, was not taxable by Denmark. Neither Congress in the controlling statutory provision, nor the respondent in his regulations construing that provision, mentions such exemption as even affecting, much less controlling, the imposition of the contested tax. That it would have been easy to have done so is obvious. For us to interpolate such criterion seems to me to be judicial legislation.

I think the facts as found in the majority opinion establish conclusively that, under section 116 (a) of the Internal Revenue Code, as amended by section 148 (a), Revenue Act of 1942, and construed by Regulations 111, sections 29.211–1 and 29.211–2, petitioner was a bona fide resident of Greenland throughout the taxable year. Therefore I would reverse.