Torkel Nesland v. Commissioner.
Nesland v. Commissioner
Docket No. 9419.
United States Tax Court
1946 Tax Ct. Memo LEXIS 50; 5 T.C.M. (CCH) 890; T.C.M. (RIA) 46255; October 28, 1946
John W. Windhorst, Esq., 1300 First National-Soo Line Bldg., Minneapolis, Minn., for the petitioner. Maurice S. *51 Bush, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: The Commissioner determined a deficiency in income tax of $893.91 for the calendar year 1943. The entire amount is in dispute. The only issue presented is whether the petitioner was, during the year 1943, a bona fide resident of a foreign country, within the purview of section 116, Internal Revenue Code, as amended by section 148 (a) of the Revenue Act of 1942. A stipulation of facts was filed, and we find the facts therein set forth, setting forth herein, however, only those portions considered material to examination of the issue, along with findings from other evidence adduced, as our Findings of Fact The petitioner filed his income tax return for the taxable year with the collector for the district of Minnesota. Petitioner was born at Grygla, Minnesota, in 1914, and lived there until about 23 years of age in April 1937. He had worked on his parents' farm near Grygla from April 1930. From April 1937 he was employed as follows: Until April 1939 at a Civilian Conservation Camp at Cass Lake, Minnesota; until April 1940 for an automobile company *52 at Brainerd, Minnesota, and thereafter for another automobile company at Cass Lake, Minnesota, until October 1, 1940; thereafter until May 1941 for another automobile company at Cass Lake, Minnesota; thereafter until June 1942 for a garage in Cass Lake, Minnesota. In June 1942 he left Cass Lake for employment in Canada on the so-called Alcan Highway. There he worked from July 4, 1942, to October 1, 1942, for Standard Salt & Cement Co. out of Fort St. John, British Columbia in Canada as a laborer. Thereafter he worked out of Fort St. John as a heavy equipment mechanic for Okes Construction Company. From October 28, 1943, to April 14, 1944, he worked for the United States Army Engineers out of Muskwa, British Columbia, Canada. Thereafter from May 15, 1944, to January 1945 he worked for the Hanford Engineer Works at Hanford, Washington, and thereafter until the date of the stipulation, about May 27, 1946, for a timber company at Castle Rock, Washington. From July 4, 1942, and throughout 1943, petitioner was physically present in the Dominion of Canada, except for about 30 days following March 9, 1943, when he was on vacation at Cass Lake, Minnesota. During the year 1943 petitioner *53 received from Okes Construction Co. for personal services rendered to it in Canada the total amount of $5,214.80. He received $995.33 for services rendered in 1943 in Canada from the United States District Engineers in connection with the Alcan Highway. The compensation received from Okes Construction Co. was not paid by the United States or any agency thereof, but the amount received from the United States District Engineers was paid by the United States. All compensation received during 1943 constituted earned income as defined in section 116 (a) (3) of the Internal Revenue Code. Petitioner is married and has three children, the first of whom was born on June 27, 1939, the second on May 6, 1942, and the third on July 20, 1945. During petitioner's absence in Canada, his family remained in Cass Lake, Minnesota, at a residence maintained by petitioner at Cass Lake, Minnesota. It was at all times the intention of the petitioner to return to the United States upon the termination of his employment on the Alcan Highway, and it was at all times his intention to remain and he did remain and now is a United States citizen. Pursuant to the terms of his contract *54 of employment with Standard Salt & Cement Co. the company paid petitioner's transportation and traveling expenses to his job in Canada. Although a contract may have never been entered into between Okes Construction Co. and petitioner, that company paid petitioner his transportation and traveling expenses back to the United States. Petitioner's contract with the United States District Engineers did not provide for the payment of petitioner's transportation and traveling expenses back to the United States by the United States District Engineers and such payments were not made to him. During the period of his employment with the Okes Construction Co. petitioner lived in a barracks at Fort St. John, British Columbia, Canada. During the period of his employment with the United States District Engineers petitioner lived in a barracks at Muskwa, British Columbia, Canada. Petitioner paid no income taxes to the Canadian Government on the earnings he made while employed in Canada. Petitioner made no inquiries of the Canadian Government concerning his income tax liability, if any, to the Canadian Government on the earnings he made in connection with his employment in Canada. During his *55 stay in Canada the petitioner did not avail himself of his privilege to vote in any elections in the United States or the State of Minnesota by absentee ballot. When petitioner went to Canada to work he did not intend to become a citizen of Canada. In connection with his work in Canada, the petitioner had written contracts of employment with the Standard Salt & Cement Co. and the United States District Engineers, and he may have had a written contract with the Okes Construction Co., but all of his copies of any such contracts have been lost. However, petitioner's contracts were standard printed forms uniformly used by the said companies and the United States District Engineers. Exhibit 1-A (attached and made a part of the stipulation) is the standard printed contract entered into by the petitioner in 1942 with the Standard Salt & Cement Co. and is identical with the original contract entered into in 1942 by petitioner and said company, except that the blanks in Exhibit 1-A were filled in on his original 1942 contract now lost. Whether or not petitioner had a written contract with the Okes Construction Co., the general terms and conditions of his employment with the Okes Construction *56 Co. are as stated in Exhibit 2-B, which is the standard printed form of contract used by the Okes Construction Co. for employment of the kind petitioner had with it. The employment contract between petitioner and Standard Salt & Cement Co. (Exhibit 1-A attached to the stipulation) provided, inter alia, and in pertinent part that the petitioner represented that he would remain in the employment of the contractor on the Alaska Highway for the working season of 1942, unless the contract should be sooner completed and unless laid off or discharged for just cause, and had further represented that in case of his failure to so remain in the employment, or if he is laid off or discharged for just cause, then he agrees to return to the United States and pay his own return transportation to Duluth, Minnesota, or some other point within the United States. The contract further provided that the employer will pay the transportation and necessary traveling expenses of petitioner from Duluth, Minnesota, to Fort St. John, British Columbia (except where transportation and subsistence is furnished by the United States), and the petitioner agrees to deposit $20 each pay day until $60 has been deposited *57 to pay his return transportation to Duluth, Minnesota, in the event he quits before the end of the season 1942, or before the completion of the contract, if completed before the end of the season, or in the event he is discharged for just cause before the expiration of such time; also, that in case petitioner quits before he has $60 on deposit, he agrees to pay the balance of his transportation to Duluth, Minnesota, or to some other point within the United States. It is agreed that upon the completion of the contract or the end of the season 1942, the $60 deposited will be refunded to petitioner, and if the petitioner continues his employment to the end of the working season of 1942, or completion of the contract, he will be paid return transportation to Duluth, Minnesota, or some other point within the United States, otherwise he is to stand such transportation expenses. Petitioner's contract with Okes Construction Co. (Exhibit 2-B attached to the stipulation) provided, inter alia, and in pertinent part, that the period of service should not, without the consent of the employee, exceed nine months and could be terminated at any time by the employer, if directed by the "Contracting *58 Officer"; that board and lodging would be furnished by the employer at the rate of $1.25 per day; that the employee will pay his return transportation costs and expenses if he voluntarily leaves prior to nine months or is discharged for cause; that if the employee satisfactorily performs and remains on the job for nine months, if required by the employer, the employer will provide return transportation costs and expenses to the point of hire; that the employer may deduct a certain amount to be used to pay the employee's return to the United States in case he leaves the employment before fulfillment of his contract. Opinion Upon the above facts, was the petitioner, under section 116 (a) (1) of the Internal Revenue Code (as amended by section 148 (a) of the Revenue Act of 1942) [1] a "bona fide resident" of Canada, so as to make nontaxable the money received from Okes Construction Co.? The respondent specifically concedes that the petitioner was physically present in Canada during 1943 (except for a temporary vacation, which is not relied on as destroying continuity of the stay in Canada), that the income from Okes Construction Co. was earned income under *59 section 25 (a) of the Internal Revenue Code, if received from sources within the United States, and that the amounts were not paid by the United States or any agency thereof. Thus those ancillary questions do not enter here. *60 We have very recently, in the case of Arthur J. H. Johnson, 7 T.C. 1040, promulgated October 24, 1946 had occasion to examine at some length and construe the statute and the regulation promulgated thereunder. The case involved alleged residence in Greenland, by a workman, for a period longer [*] here involved. That examination need not here be repeated. We concluded that the petitioner was not a resident of Greenland. Here, also, after considering carefully the authorities, the above facts, the regulations cited and the arguments of counsel, we are of the opinion that the petitioner was not a bona fide resident of Canada in 1943. The arguments made by the respective parties are based upon no real difference in the facts. It is agreed that the petitioner at all times intended to return to the United States upon termination of his employment on the Alcan Highway. The gist of the petitioner's contention is: that, under Regulations 111, section 29.116-1, "Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of sections 29.211-2, 29.211-3, 29.211-4, and 29.211-5 *61 relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual"; and that section 29.211-2, as to residence of aliens in the United States, provides: An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. * * * The petitioner *62 argues that under the above test, he was a resident of Canada throughout 1943, because it was his intent at all times "to return upon the termination of his employment on the Alcan Highway," therefore he had a "floating intention, indefinite as to time, to return" to the United States, not sufficient to make him a transient in Canada. He argues also that, "There is nothing to show that petitioner had a definite intention as to his stay, other than that he intended to return to the United States upon the termination of his employment on the Alcan Highway," and that it could not have been predicted how long it would take to complete the highway. In our view, there was not, in the employment in Canada and petitioner's sojourn there, the nature of residence. Though he did not intend to leave until his employment on the Alcan Highway was completed, he did intend to leave and return to the United States when such employment was completed. He did have a "definite intention as to his stay," that is, that he intended to return to the United States, though the precise length could not be known. How long he would stay depended in fact on how long he wished to stay on the Alcan Highway employment, *63 for he could not be complelled to remain. His contracts of employment were of brief tenure, with provision for his transportation to the United States at the end thereof. He had a wife and children in Minnesota, and came back on a vacation to Cass Lake, where he maintained a residence for them. He worked "out of" certain places in Canada where he lived in barracks, rather than "makes his home temporarily" in Canada, an element necessary to residence of one who, within the language of Regulations 111, section 29.211-2, relied on by the petitioner, has a "purpose * * * of such nature that an extended stay may be necessary for its accomplishment." Moreover, the record before us here fails to indicate compliance with the idea expressed in the regulation above as to purpose requiring an extended stay; for nothing, save the mere fact of length of time he actually did stay, indicates that he intended to remain in Canada for an extended period. It does not appear that he intended to stay until the completion of the Alcan Highway, or that in fact he did stay until it was completed. We find no proof of a definite purpose to stay longer than suited his desires. In short, proof is lacking that *64 he was not a transient. "Whether he is a transient is determined by his intentions with regard to the length and nature of his stay," under the regulation relied on. We are not informed by the record of any definite intent or purpose to remain for any definite or "extended stay." He apparently had no purpose except to work, no purpose which would require any extended stay "necessary for its accomplishment." Though he contracted for employment with Standard Salt & Cement Co. for the "working season of 1942", he remained with it only until October 1, 1942, which apparently was not the end of the season. In addition, though the point was raised by neither party, we have examined the agreements between Canada and the United States, under which the Alcan highway was built, of which we take judicial notice. These were entered into under dates of March 17 and 18, 1942, and August 6, 1943. The first, in paragraph 4 (d) provides that the Canadian Government agrees "* * * to remit income tax on the income of persons (including corporations) resident in the United States, who are employed on the construction or maintenance of the highway." 56 Stat., Part 2, 1458 (1461). The second agreement, *65 in paragraph 6, provides that the Canadian Government will request the provincial government "not to impose license fees on non-military drivers of trucks belonging to the United States Army, and not to levy head or pool taxes upon non-military personnel normally resident in the United States which is engaged on United States military projects in Canada." 57 Stat., Part 2, 1065 (1066). We construe "remit" in the first agreement as meaning "to refrain from exacting inflicting or enforcing" - Webster's New International Dictionary; and consider the language of the second agreement as to head or pool tax as corroborative of the intent of Canada not to tax, in general, those engaged on projects such as the Alcan Highway, and that "resident in the United States" in the first agreement, means in substance the same as "normally resident in the United States", in the second. Considering, therefore, the intent of Congress in amending section 116 (a) to avoid double taxation of those actually so resident abroad as to be paying tax to foreign countries, we find in these provisions of the agreements with Canada further indication that petitioner was not a resident of that country, within the *66 meaning of section 116 (a) as amended by section 148 (a) of the Revenue Act of 1942. Cases cited, involving the statute prior to its amendment in 1942, appear to us of no aid. We conclude and hold that petitioner was not, during 1943, a bona fide resident of Canada, therefore that the income earned by him while employed by the Okes Construction Co. is subject to taxation. Decision will be entered for the respondent. Footnotes
1. SEC. 116. EXCLUSIONS FROM GROSS INCOME. [As amended by sec. 148(a). Revenue Act of 1942.] In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: (a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. - (1) Foreign Resident for Entire Taxable Year. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25(a)↩ if received from sources within the United States; but such individuals shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.