Harry Ralph Leacock v. Commissioner.
Leacock v. Commissioner
Docket No. 7730.
United States Tax Court
1947 Tax Ct. Memo LEXIS 15; 6 T.C.M. (CCH) 1282; T.C.M. (RIA) 47328; December 19, 1947
*15 1. Petitioner, employed by Douglas Aircraft Company, Inc. as a civilian worker at an Army base in Eritrea, East Africa, during 1943, held not to be a bona fide resident of a foreign country during that year within the provisions of section 116 (a) (1) of the Internal Revenue Code. 2. The amount of compensation received by petitioner during taxable year determined and the amounts found to which he was entitled as deductions in that year for taxes, expenses, contributions and losses. Harry Ralph Leacock, pro se. Richard L. Green, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency in income tax for the calendar year 1943 in the amount of $1,800.47. *16 The issues presented are: (a) was petitioner a bona fide resident of a foreign country during the taxable year 1943, within the purview of section 116 (a) (1) of the Internal Revenue Code, as amended; (b) was the compensation received by petitioner in 1943 from Douglas Aircraft Company, Inc., $7,342, as reported in petitioner's return, or a lesser amount; (c) is petitioner entitled to claimed deductions for taxes, expenses and charitable contributions and to claimed losses with respect to property lost or stolen and losses sustained upon the sale of motorcycles and, if so, in what amounts. Findings of Fact Petitioner is an individual now residing at Rural Route, Millersburg, Indiana. At the time the original petition was filed on April 20, 1945, and prior thereto, he resided in Los Angeles, California. His return for the taxable year 1943 was filed with the collector of internal revenue for the sixth district of California and was on the cash basis. In the year 1942 and prior thereto, petitioner resided with his family in Glendale, a suburb of Los Angeles, California. He was at that time working for Lockheed Aircraft Company. The Douglas Aircraft Company, *17 Inc. was then hiring men to go overseas to work and petitioner entered the employ of the company in May 1942 under a contract executed with that company and left California in May 1942 for Eritrea, East Africa, where the Douglas Aircraft Company, Inc. was operating an air base under supervision of the United States Army. Petitioner's contract was for service in Eritrea for a period of six months with the privilege of extension for additional six months' periods. During the entire year 1943, petitioner was stationed at Eritrea and was continuously employed there by the company until February 1944, first as a mechanic, next as a lead boss, and, finally, as a supervisor. While petitioner was so employed and during the entire year 1943, his wife, two children, and mother remained in their residence at Los Angeles. During the period petitioner was stationed in Eritrea, the Douglas Aircraft Company, Inc. employed from 600 to 2,000 men at the base. Approximately 500 of these employees returned to the United States because of dissatisfaction on the expiration of the six months' contract. Petitioner, however, renewed his contract twice, in each instance for additional six months' periods, *18 the second extension being to November 17, 1943 and thereafter until 60 days after return transportation to the United States was made available by his employer. At the expiration of any period he could have returned to the United States if he so desired or if his service had not been satisfactory to his employer he would have been subject to dismissal at any time. Petitioner actually stayed in Eritrea until February 1944, at which time he and other employees were sent back to the United States by his employer, his return passage and traveling expenses being paid by it. Petitioner did not pay income tax to any foreign country while stationed in Eritrea. While there he did not intend to relinquish his United States citizenship and at all times intended to return to the United States. He provided for his family during the time he was stationed in Eritrea. He had no intention whatever of abandoning his wife, children and mother, and always intended to return to them. At the expiration of his services in Eritrea petitioner returned to his family in Los Angeles, where he continued to reside during 1944. Most of petitioner's compensation paid by Douglas Aircraft Company, Inc. was deposited *19 by the company, pursuant to agreement, in his bank account with the Bank of America in California. Petitioner was 31 years old in 1943 and was registered for the draft in California. He was able to go outside of the United States as a civilian only with the permission of his draft board in California. Petitioner filed an income tax return for 1943, giving his address as 552 So. Fairfax Ave., Los Angeles, California, his occupation as mechanic, and reported as salaries, wages and compensation from the Douglas Aircraft Company, Inc. $7,342, as exempt under section 116 (a) (1). No deductible losses, personal exemption or credits were claimed in the return and no net income or tax was reported thereon. In asserting the deficiency, the respondent determined that the compensation of $7,342 was not exempt under section 116(a) of the Internal Revenue Code and held that petitioner had not established that he was a bona fide resident of a foreign country during the taxable year 1943. The salary received by him during the year 1943 from Douglas Aircraft Company, Inc. was in the amount of $7,341.93. Petitioner's service during his employment in Eritrea, as above *20 detailed, required at times his traveling into combat areas. His employer required that he wear on these occasions the uniform of an officer in the United States Army without, however, the regular insignia. He was furnished with a Middle East Pass certifying that the bearer had the assimilated rank of Captain in the United States Army. This was done so that if captured in enemy territory he would be treated as a prisoner of war. Petitioner was required to buy the uniform and equipment in question at his own expense which he did, during 1943, at a cost of $175. Petitioner, in 1943, contributed $15 to the American Red Cross. He was told by his wife, upon his return to his home in California, that she had expended his funds, during 1943, the sum of $60 for herself and their children as weekly contributions in attendance at two churches. Petitioner's wife also advised him that during that year she had expended $20 as California State sales tax and $45 for amusement and liquor taxes. Petitioner purchased in the latter part of 1942, while at Eritrea, a secondhand motorcycle. Fifty per cent of the use of this motorcycle was by petitioner in performing his duties at the base, which required *21 him to travel back and forth over a considerable area as he had men working under him at various points. Petitioner's recollection of the cost of this motorcycle to him was $150approximately. After using this motorcycle for a time in 1943 it proved defective and petitioner was unable to procure replacement parts and sold it at a price, according to his recollection, of approximately $50. Petitioner thereupon bought another motorcycle which he used for the same purpose at a cost, according to his recollection, of approximately $230. This second motorcycle he sold in the latter part of 1943 at a price recollected by him to be "around $90 or $95". In 1943, while in Eritrea, petitioner was supervising the work of mechanics in repairs on several different types of airplane motors. The "hookup" of the various control lines and electrical connections, which were in large numbers, was not the same in the different makes of motors and it was difficult for mechanics, on disconnecting these, to reassemble them properly. To meet this situation petitioner bought a Leica camera with which he took pictures of the connections and hookup before they were disassembled and these pictures were used *22 by his mechanics in reassembling the motor. Petitioner also purchased, from his own funds, certain special gauges and precision tools which were not furnished by his employer but were necessary and helpful in the prosecution of the work. Petitioner's recollection was that he paid approximately $200 for the Leica camera and a similar amount for the tools. During 1943 petitioner was sent to Cairo, Egypt, by plane, with some of his men, and took the aforesaid camera and tools with him as equipment. Upon landing at the airport petitioner and his men went into the city to be quartered and, by direction of the authorities at the airport, petitioner left the camera and tools in the airplane, being assured that they would be perfectly safe. On his return to the airport next day the camera and tools had been taken by unknown parties and were never recovered. Opinion On the main issue in this proceeding, whether the compensation received by petitioner from the Douglas Aircraft Company, Inc. in 1943 during his employment in Eritrea, East Africa, is exempt from tax under section 116 (a) (1) of the Internal Revenue Code, as amended by section 148(a) of the Revenue Act *23 of 1942, we must hold that under the facts disclosed petitioner was not a resident of a foreign country within the purview of the cited Act. We have had several cases involving employment under the conditions here existing in which such exemption was denied. Petitioner is concluded by those decisions. J. Gerber Hoofnel, 7 T.C. 1136; Arthur J. H. Johnson, 7 T.C. 1040; Ralph Love, 8 T.C. 400; Michael Downs, 7 T.C. 1053. Petitioner contends that his salary received from the Douglas Aircraft Company, Inc. during 1943 was less by some amount than $7,342, reported by him upon his return. He had no bank records of the deposits made to his account and relied wholly upon his own recollection. He introduced in evidence, however, Treasury Form W-2, furnished him by the Douglas Aircraft Company, Inc., advising him that the total amount in wages paid to him during the year 1943 was $7,341.93. There was also introduced in evidence, without objection, the report made to the Treasury Department by that company that it had paid this sum to the petitioner during the calendar year 1943 as compensation for services and that no deductions had been *24 made therefrom by the employer for taxes. We have, accordingly, fond that the salary received by petitioner from this source in 1943 was the sum of $7,341.93. With respect to petitioner's claim for deduction for contributions to two churches made by his wife and payments made by her of California sales tax and liquor and amusement taxes, it is clear that the deduction of these amounts can not be allowed. Petitioner's testimony as to these expenditures is merely hearsay as representing something told him by his wife who did not testify. Petitioner, however, is entitled to the deduction of $15, which we have found he, himself, personally paid as a contribution to the American Red Cross. As to the claimed deductions for expenses incurred in the required purchase, as a civilian, of a specified officer's uniform for wear by him in combat areas, and loss incurred by him on the sale of two motorcycles and from theft of certain tools and a camera used by him in his work, the question of allowance presents some difficulty. Petitioner has no receipt or other record showing the cost of any of the articles or the sale price of those disposed of and is forced to rely wholly upon his recollection. *25 His failure, however, to have written evidence of these expenditures is, we think satisfactorily explained by the fact that he had been assured by his employer that his salary would not be subject to income tax and since this was his only income there would be no deduction reflected upon a return if the income was, in fact, not subject to tax. He does not, himself, attempt to give the exact figures, but only approximate ones. The petitioner impressed the Court as a witness testifying honestly and truthfully. We are convinced that he did make the expenditure for uniform and equipment and sustained losses, in some amount, as described by him. In so far as the purchase of the uniform and equipment is concerned the figure of $175 of cost is given as definite, but with respect to this item there is no testimony showing what salvage value to petitioner remained after its use in service in Eritrea. Many articles of this kind have considerable use and value for individual and personal purposes. Such expense as petitioner actually sustained in the purchase of this equipment, less its salvage value, would represent a deductible expense. Marcus O. Benson, 2 T.C. 12; affd., 146 Fed. (2d) 191; *26 Eleanor E. Meier, 2 T.C. 458; Helen Krasko Harsaghy, 2 T.C. 484. We think that as to this item as well as the items of loss on resale of the motorcycles and theft of petitioner's equipment, the rule laid down in the case of Cohan v. Commissioner, 39 Fed. (2d) 540, is applicable. We, accordingly, hold that petitioner has sustained a deductible expense with respect to the purchase of officer's uniform and equipment, required of him by his employer as an incident to his employment, in the sum of $87.50. With respect to the resale by petitioner of the two motorcycles, we hold that petitioner sustained a loss not less than $115 and, as these motorcycles are shown to have been used only 50 per cent for business purposes, petitioner is entitled to a deduction upon this loss in the amount of $57.50. We further hold that petitioner sustained in the theft of camera and tools a loss of not less than $200 and that he is entitled to the deduction of this amount. Upon the hearing, respondent concedes petitioner was, in the taxable year, a married man with three dependents and is entitled to the statutory credit provided under these circumstances. This concession *27 will be given effect upon recomputation. Decision will be entered under Rule 50.