Amy L. Lockhart v. Commissioner. Tex E. Lockhart v. Commissioner.
Lockhart v. Commissioner
Docket Nos. 27563, 27564.
United States Tax Court
1952 Tax Ct. Memo LEXIS 286; 11 T.C.M. (CCH) 254; T.C.M. (RIA) 52077; March 21, 1952
*286 Max Albeck, Esq., 756 S. Broadway, Los Angeles, Calif., for the petitioners. William P. Flynn, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated proceedings the Commissioner determined deficiencies of $721 in the income tax of Amy L. Lockhart and of $831 in the income tax of Tex E. Lockhart for 1945. The only issue is whether Tex E. Lockhart was a "bona fide resident" of Saudi Arabia during 1945 within the meaning of section 116 (a) (1) of the Internal Revenue Code. Petitioners are husband and wife residing in Glendale, California. They have been married since October 19, 1941. Petitioners filed a joint income tax return for 1945 with the collector of internal revenue for the sixth district of California. From the time they were married until approximately October 10, 1944, petitioners lived in hotel rooms and furnished apartments in Los Angeles and Glendale, California. On September 9, 1944, Tex entered into a rTempoary Employment Agreement with Bechtel-McCone Corporation in Los Angeles for employment in Ras Tanura, Saudi Arabia. He departed from the United States about *287 October 20, 1944 and arrived at Ras Tanura about December 29, 1944, where he executed an employment agreement with Compania Constructora Bechtel-McCone, S. A., which company was under a written agreement with Arabian American Oil Company to perform certain construction work at Ras Tanura or in the general vicinity thereof. This contract was for a period of 18 months. Pursuant to the contract, Tex was given free transportation to and from Saudi Arabia by his employer. He was to work as a tire and lube mechanic or in such other capacity as his employer might require and was to be paid at the rate of $450 per month based on a 48-hour week plus overtime computed at the same rate. He was required to accept and utilize free meals and sleeping accommodations furnished by his employer. He was also to "Comply with and abide by all regulations governing Employee's movements outside of the 'construction area', it being understood that trips outside of said 'construction area' will of necessity be rigidly restricted and controlled and determined by the Company". He was to engage in no other employment and was not to participate in local polities, and agreed to abide by all of the laws of the country *288 and locality in which he was working. Prior to his departure Tex was employed as a trailer mechanic in the construction of trailers for Weber Trailer and Manufacturing Company in Los Angeles where he earned $1.26 per hour. Before he left for Saudia Arabia, Tex and Amy discussed his employment with Weber Trailer and Manufacturing Company and the advantages of higher wages in Saudi Arabia. They decided that Tex would observe living conditions in Ras Tanura and if satisfactory that Amy would join him at some unspecified date in the future. Tex was issued a passport by the United States on September 18, 1944 and an original visa to enter Saudi Arabia was issued on September 21, 1944. He was granted a permit by his local draft board to depart from the United States for six months which was later extended after his arrival in Ras Tanura. On his arrival in Saudi Arabia he was issued a residence permit by Arabian officials. On December 29, 1944, Tex commenced his employment in Ras Tanura as an automotive mechanic in the maintenance of automotive equipment and as part of his duties taught this trade to the natives. He did no construction work. Tex remained in Ras Tanura for 18 months *289 and lived in quarters of a temporary nature maintained by his employers. His meals were taken in the company messhall. There were no facilities in Ras Tanura for wives or families in 1945. Tex paid no income taxes to Saudi Arabia in 1945 on his salary. He allotted $400 of his monthly salary to be sent to the Bank of America in Los Angeles for deposit in a joint bank account which he maintained with Amy. His pay was received twice a month in Ras Tanura in Indian rupees. At the end of the 18 months specified in his employment contract, Tex left Ras Tanura and arrived in Los Angeles in June 1946. After returning to Los Angeles he took a few weeks vacation and two and one-half months later flew to San Francisco to arrange with Bechtel-McCone for future employment in Saudi Arabia. When he returned to Los Angeles from San Francisco, Amy was seriously ill. For some years she had had an arrested case of tuberculosis and a recent operation for appendicitis had aggravated the condition. Tex thereupon postponed his return to Saudi Arabia until Amy was sufficiently recovered and so advised Bechtel-McCone. In the meanwhile Tex took employment with Weber Trailer and Manufacturing Company. *290 Petitioners were then living in a single room and after looking for larger quarters purchased a five-room house in March 1947 into which they moved the following month. In the event Tex returned to Saudi Arabia and Amy eventually joined him they planned to rent the house or permit Amy's sister to live in it. Amy's health improved and Tex left the United States about December 20, 1947 for Saudi Arabia. He arrived in Ras Tanura about December 28, 1947 and resumed his employment with Bechtel-McCone under a contract similar to his former contract. His passport was renewed November 20, 1947 and extended to September 18, 1948. This passport was cancelled and another issued to him by the United States consul at Dhahran, Saudi Arabia on November 2, 1948. At the end of seventeen months Tex returned to the United States. This was in May 1949. During his second stay in Saudi Arabia the living quarters had been made permanent. Living quarters were also made available for wives, but in order to take advantage of them it would have been necessary for Tex to transfer his employment to Arabian American Oil Company. He made no arrangements for such a transfer though he had communicated with *291 Amy concerning the matter. After his return to the United States in May 1949, Tex took a month's vacation and then started arranging with Bechtel-McCone for a new contract of employment in Saudi Arabia. During "processing" Tex failed to pass the physical requirements. Consequently, he did not return to Saudi Arabia and later resumed employment with his old employer, Weber Trailer and Manufacturing Company. Opinion This Court has discussed at length the principles governing cases of this kind in Arthur J. H. Johnson, 7 T.C. 1040, and Michael Downs, 7 T.C. 1053, affirmed 166 Fed. (2d) 504. We have also had before us at least two cases, disposed of contrary to petitioner's contention, in Memorandum Opinions, involving employees who sojourned in Saudi Arabia under employment contracts with Compania Constructora Bechtel-McCone, S.A. similar to the contracts here involved. Nevertheless, petitioner earnestly seeks to distinguish those cases and on brief relies heavily on Audio Gray Harvey, 10 T.C. 183. We have given sympathetic consideration to the arguments advanced by petitioner, but are not convinced. The Harvey case is readily *292 distinguishable. There the tax year involved was 1943. As Judge Disney pointed out, however, the petitioner was "a man whose career is that of foreign service with a company by which he has been employed since February 1936, actually abroad from November 1938 until February 1945 (except six months in 1941). He was unmarried and was accustomed to working in foreign lands, and, in effect, to use a colloquial expression, 'his home was where he hung his hat'." We cannot say on this record that Tex was a man "whose career is that of foreign service". True, he might have set out in that direction if salaries continued good and living conditions were satisfactory for family life in Saudi Arabia. But the year in which Tex seeks to take advantage of the exclusion granted by section 116 (a) (1) is the first year he was ever absent from the United States. He had not yet, like Harvey, become a man whose "career is that of foreign service". Tex's first foreign employment was in the nature of a trial balloon. He intended to make it his career only if living conditions abroad were satisfactory for bringing Amy along. Such a situation never developed in his case. During the taxable year, the crucial *293 one here, we cannot find that Tex had formed a definite intention to reside in Saudi Arabia as a bona fide resident. In Harvey, on the other hand, the petitioner already had been abroad in his business for four or five years when he claimed the benefits of section 116 (a) (1). We do not wish to be understood as holding that under no circumstances can a taxpayer who has been abroad only one year claim the exclusion granted by section 116 (a) (1), but there are not enough facts in the present case to make it distinguishable in its essentials from the Downs and Johnson cases, supra. Accordingly, we find against the petitioner. Decision will be entered for the respondent.