Len Sampson Crane v. Commissioner.
Crane v. Commissioner
Docket Nos. 31486, 34166.
United States Tax Court
1952 Tax Ct. Memo LEXIS 214; 11 T.C.M. (CCH) 516; T.C.M. (RIA) 52148; May 21, 1952
*214 Neal Herring, Esq., 1601 William-Olive Bldg., Atlanta, Ga., for the petitioner. Ralph V. Bradbury, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in income tax in the amount of $1,098.61 for 1947 and $669 for 1948. The question for decision is whether petitioner's earnings derived from employment on Okinawa Island during 1947 and part of 1948 are to be excluded from his gross income pursuant to Section 116 (a) of the Internal Revenue Code. Petitioner is a resident of College Park, Georgia. He filed his income tax returns for the years 1947 and 1948 with the collector of internal revenue for the district of Georgia. Petitioner was discharged from the armed forces on October 30, 1945 and returned to Atlanta, Georgia, which was his home prior to entry into military service. He was married at the time of his discharge and lived with his wife until they were separated in March of 1946. A final decree of divorce was entered on August 1, 1946. There were no children, and the wife received the husband's property by mutual agreement. Subsequent to petitioner's *215 discharge from the armed forces he obtained employment with the Calvert Iron Works in Atlanta, Georgia, where he remained until after separation from his wife. He had no regular employment thereafter during 1946 in the United States. In August 1946 petitioner accepted civilian employment as an aircraft maintenance technician in Okinawa Island for the United States War Department. Okinawa was then and continued to be during the years involved under military occupation by the armed forces of the United States. Petitioner departed from California by air on September 15, 1946, arriving in Okinawa on September 19, 1946. Under the terms of his appointment he agreed to remain overseas for a period of not less than nine months, but the War Department could terminate his services at any time, and he could have been ordered home at any time. At the time petitioner departed from the United States in September 1946, he left behind him no bank account, property, wife or children, for he had none to leave behind. However, his parents and four sisters were then living in the United States. When petitioner left for Okinawa, realizing that his appointment was for not more than nine months, he *216 was considering the possibility of going on to China to work with General Chenneault and the Chinese National Air Lines after his employment with the War Department terminated. After arriving in Okinawa, he found that he could not contact General Chenneault, and he considered other possibilities of working in China or Japan. However, his plans to go either to China or Japan did not materialize. He does not speak either Chinese of Japanese, and he never applied for entrance either to China or to Japan. He never renounced his United States citizenship, has never applied for citizenship elsewhere, nor has he ever had any intention to do so. Transportation to Okinawa was furnished by the Army. The commanding officer of the port of aerial embarkation furnished petitioner with a certificate of identification which he was directed to surrender to the commanding officer of the port of entry upon his return to the United States. Petitioner's work with the War Department was terminated on January 21, 1947, and, with its permission, he was hired by Guy F. Atkinson Company and J. A. Jones Construction Company, joint venturers (hereinafter referred to as "Atkinson"), for a minimum of one year *217 commencing January 22, 1947. Atkinson was engaged in constructing installations for the United States Army in Okinawa. Atkinson was obligated to return petitioner to his original point of employment at its expense, just as the War Department had been so obligated. Board, lodging, medical services, and dental care of an emergency nature were furnished by the Army and by Atkinson at $12.50 a week. The only lodging facilities available were quonset huts and prefabricated houses, and his meals were taken in consolidated mess halls. Petitioner's contract of employment with Atkinson provided that "The Employee understands that the various sites of the work are under the supervision of military authority." He did not have the unrestricted right to come and go as he pleased on the island, and at all times he was under the orders of the "military police". He could go no place that military personnel could not go, nor could he go from one village to another except as the military allowed him to do so. Other than working with the natives of the island, petitioner did not participate in any activities with them. His social life was restricted to swimming, the use of facilities of a military *218 officers club, two civilian clubs, and a rest camp for civilians. He could not have started a business in Okinawa upon completion of his contract with Atkinson except with permission of the Army authorities. Had he resigned or quit his job with the Army or Atkinson, he would have been required to return to the United States. Petitioner was informed that he had been elected to receive degrees in Masonry by the Okinawa Lodge, but there is no evidence that he ever joined in any activities of the lodge or whether the lodge actually ever had any activities. Petitioner was paid in cash and transmitted his savings to the United States by money order. On March 27, 1947 he sent $1,000 to his father in College Park, Georgia, for the purpose of opening a savings account in the Bank of Fulton County, East Point, Georgia, and thereafter sent him additional funds to be deposited in that account. No withdrawals were made from the account. His physical presence in the United States was not necessary in order to make withdrawals. On November 6, 1947, petitioner married an Army nurse in Okinawa, whom he had met in or about December 1946. Before they could be married, they were required to obtain *219 permission of the commanding general, Ryukyus Command, the vice consul of the United States, and the bride's commanding officer. No living quarters were available to the couple. Mrs. Crane was required to continue living in the nurses' compound at the army post and the petitioner in his regular quarters. At the time of their marriage, it was their intention to return to the United States within approximately one year. Even if the Government had been willing to furnish them quarters they would not have remained in Okinawa more than from six months to a year after they actually returned to the United States in September 1948. Petitioner took no steps to establish a permanent residence in Okinawa and never formed an intention to do so. He formed a definite intention to return to the United States about June 1948. Although he might have obtained other employment, his job was coming to a conclusion soon thereafter, and his wife was pregnant. The petitioner returned to the United States under travel orders of the Department of the Army, Corps of Engineers, Office of the District Engineer, Okinawa District, dated September 1, 1948, which orders provided that the petitioner was under the *220 control and orders of the Transport Command while being transferred to the United States. The petitioner's travel orders provided that he was to return to the immigration officials at the port of entry the identification card furnished him when he departed from the United States. Petitioner departed from Okinawa for the United States aboard an army transport on September 3, 1948. At the time of his return to the United States, Atkinson was terminating the employment of a substantial number of its employees. He arrived in the United States on September 25, 1948. Petitioner earned $5,859.41 in 1947 and $4,801.90 in 1948 from Atkinson for personal services rendered in Okinawa. He paid no taxes in 1947 or 1948 to any government other than to the United States, and he knew of no such taxes which he could or should have paid. Petitioner was not a bona fide resident of a foreign country during the entire year 1947 nor was he a bona fide resident of a foreign country for at least two years prior to his return to the United States. Whether a citizen of the United States becomes a bona fide resident of a foreign country within the meaning of Section 116 (a) has been considered in a wide *221 variety of cases, particularly in relation to technicians and others who were absent from this country in connection with the war effort. Cf. Michael Downs, 7 T.C. 1053, J. Gerber Hoofnel, 7 T.C. 1136, both affirmed sub nom. Downs v. Commissioner, 166 Fed. (2d) 504 (C.A. 9), certiorari denied, 334 U.S. 832; Arthur J. Johnson, 7 T.C. 1040; Ralph Love, 8 T.C. 400; Dudley A. Chapin, 9 T.C. 142H. Thorsell, 13 T.C. 909; Jones v. Kyle, 190 Fed. (2d) 353 (C.A. 10), certiorari denied, 342 U.S. 886. In such situations it has generally been held that Section 116 is not applicable. Although there are several decisions reaching a different result where the facts were thought to justify the conclusion that the taxpayer had made his home in the foreign country involved, identifying himself in some degree with the activities and customs of such country (cf. Herman Frederick Baehre, 15 T.C. 236; Swenson v. Thomas, 164 Fed. (2d) 783 (C. *222 A. 5), we think the facts herein require us to follow the former line of decisions. An additional reason exists for approving the Commissioner's determination as to the year 1948. Since petitioner did not remain in Okinawa during the entire year, he must rely upon Section 116 (a) (2) which requires bona fide residence in a foreign country for at least two years. Therefore, in view of the fact that petitioner arrived in Okinawa for the first time on September 19, 1946, and departed from Okinawa on September 3, 1948, there is a failure to meet the two-year requirement of Section 116 (a) (2). Cf. Richard H. Lovald, 16 T.C. 909, 915. It becomes unnecessary to consider the further contention made by respondent that Okinawa is not a "foreign country" within the meaning of Section 116. Decisions will be entered for the respondent.