Lloyd M. Williams v. Commissioner.
Williams v. Commissioner
Docket No. 15178.
United States Tax Court
1948 Tax Ct. Memo LEXIS 70; 7 T.C.M. (CCH) 765; T.C.M. (RIA) 48222; October 18, 1948
Lloyd M. Williams, pro se, for the petitioner. A. H. Moorman, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency of $529 in income tax for the calendar year 1944. The issue is whether compensation amounting to $3,599.38 received by petitioner for services rendered in Northern Ireland is exempt from taxation under the provisions of section 116(a) of the Internal Revenue Code. Petitioner claims a refund in the amount of $93.34 for tax withheld from the compensation. Facts set forth in a stipulation *71 are incorporated herein by reference as part of our findings of fact. Findings of Fact The petitioner, a resident of Chicago, Illinois, filed his returns for the taxable year on the cash basis with the collector for the first district of Illinois. During the taxable year he was married and had no dependents. On May 1, 1942, the United States entered into a contract with the Lockheed Aircraft Corporation, a California corporation, for the organization and operation, until November 1, 1942, of an aircraft depot at Langford Lodge, in North Ireland. The agreement authorized Lockheed Aircraft Corporation to enter into a subcontract with its wholly-owned subsidiary, the Lockheed Aircraft Corporation, a Delaware corporation, hereinafter referred to as Lockheed, upon the terms of the contract. The contract was subject to termination by the United States whenever conditions arose which made such action advisable or necessary in the interest of the United States. On June 17, 1942, Lockheed and its parent entered into the subcontract authorized by the prime contract. The term of the prime contract was extended to August 31, 1943, and on August 18, 1943, from that date to June 30, 1944. Like *72 extensions were made of the subcontract. On February 11, 1944, the prime contract was amended by an instrument designated as supplemental agreement No. 10, to provide for the discontinuance of certain work and the release of employees theretofore engaged in the work being discontinued who could not be effectively used in the remaining operations. On December 9, 1946, Lockheed and its parent corporation agreed that the completion date of the subcontract should be November 24, 1946. By a "Change Order" signed on June 18, 1947, the total sum allotted to the contract, as amended, was reduced in the sum of $9,000,000. For a number of years prior to June 23, 1943, the petitioner was permanently employed at a salary by the Board of Education of the City of Chicago. During the early part of June 1943 Lockheed established an employment office in Chicago and advertised for experienced technicians for overseas employment. The petitioner applied for a position and, effective July 23, 1943, Lockheed accepted his application for a position as a machinist. The petitioner and Lockheed entered into a written contract of employment as of July 23, 1943, which recited that the United States had entered *73 into a contract with the Lockheed Aircraft Corporation for the operation of an aircraft depot outside of the continental limits of the United States; that Lockheed had undertaken to operate the depot as a subcontractor under the agreement; that the prime and subcontracts were subject to termination by the United States under the terms set forth therein; that petitioner understood that he would probably be called upon to render services under the contract in a war combat zone in a foreign country or in the field with armed forces and that he might be subject to military law and discipline. The agreement then provided, among other things: (1) That the term of the contract commenced on the date the employee reported for duty at the time and place within the United States designated by Lockheed and was to continue: "* * * for (i) the duration of the contract between the Government and Lockheed as from time to time extended and for such period after the termination or completion of said contract as Contractor may, in respect of such Employee, deem necessary for the winding up of the operations carried on under said contract after such termination or completion; and (ii) thereafter until *74 return transportation to the United States for such Employee is made available by Contractor or by the Government to Contractor which transportation Contractor shall use its best efforts to obtain as promptly after the end of the period described in the foregoing clause (i) as is practicable under the circumstances then existing; and (iii) with respect to any Employee who has faithfully performed his duties and obligations hereunder throughout the term provided in the foregoing clauses (i) and (ii) or whose employment has been terminated hereunder through no fault of the Employee under Paragraph B of Article 11 hereof, for a period of sixty (60) days after such transportation is made available, provided, however, that with respect to the sixty (60) day period provided in this clause (iii), any employee who shall during said period enter into any other employment (including the service of the Government) shall be deemed thereby to have voluntarily terminated his employment hereunder and any employee who shall not enter into such other employment shall throughout such period perform such services as may be required of him by Contractor." (2) That unless otherwise approved by Lockheed, *75 the salary of petitioner while employed outside of the United States should be deposited for the account of petitioner in a bank in the United States to be designated by him, in the absence of such a designation, in a member bank of the Federal Reserve System to be selected by Lockheed; that (3) Lockheed should pay to petitioner at his place of duty not in excess of 10 per cent of his salary; (4) that for each continuous period of six consecutive months of employment outside of the United States, petitioner should receive in addition to his salary, an amount equivalent to one-half month's foreign salary; (5) that there should be no restriction upon the number of hours of work or work days per week or additional compensation paid for extra or overtime services; (6) that: "* * * throughout the entire term of his employment hereunder, as hereinbefore provided, diligently and faithfully perform the services and duties required of him hereunder, and shall abide by all rules, regulations and requirements of Contractor, its officers, agents, and supervisory employees, as well as those of the United States Government and/or the War Department, and all civil or military laws and regulations *76 in effect from time to time at the place or places of duty hereunder;" (7) that: "During the time that Employee is employed hereunder at any place or places outside of the United States, Contractor shall furnish or cause to be furnished without cost to employee, such adequate food, lodging, special clothing and equipment, medical, nursing, and hospital services and treatment and recreational facilities as circumstances may reasonably permit;" (8) that the employment was subject to termination by Lockheed for any of the following causes: (a) If the contracting officer representing the United States required the dismissal of petitioner to be necessary or advisable in the interests of the United States. (b) If Lockheed had reason to believe that petitioner was not trustworthy, careful, or otherwise disqualified to render services required by the Contractor under the contract. (c) If petitioner, in the opinion of Lockheed's medical examiner, was found to be afflicted with any venereal disease. (d) If petitioner violated any of the provisions of the employment contract or failed faithfully and diligently to perform the services required of him thereunder, and that if the contract *77 was terminated by Lockheed for any of such causes, Lockheed should not be required to make available to petitioner return transportation to the United States or be under any obligation to pay petitioner salary for any period after such termination; (9) that pursuant to Paragraph B of Article 11, Lockheed might further terminate petitioner's employment without cause under the following circumstances: (a) Upon or after completion and upon or after termination by the Government of the Government contract. (b) If in the opinion of Lockheed the health or physical condition of petitioner was such as to render further services by petitioner undesirable, and (c) in the event of the termination by Lockheed of petitioner's employment for any one of such causes Lockheed should make available to petitioner return transportation to the United States and continue his salary until then and for a period of 60 days thereafter; (10) that in case the petitioner terminated his employment voluntarily, he should not, after such termination, be entitled to any salary, or, unless approved by Lockheed, to return transportation to the United States or reimbursement therefor. Prior to his employment by Lockheed, *78 petitioner created several aircraft inventions. One of his considerations for accepting employment by Lockheed was that it would afford him a better opportunity to interest Lockheed in his inventions. When signing the employment contract, petitioner executed another document for the purpose of preventing Lockheed from claiming inventions theretofore invented by him. On July 23, 1943, petitioner was furnished a ticket to Albany, New York, the assembly point for Lockheed technicians, and on about August 15, 1943, he left New York on a ship for a port in Scotland. Upon his arrival in Scotland, petitioner proceeded directly to the air base of Lockheed known as Langford Lodge, in Northern Ireland, where he was promptly furnished with army clothing and a gas mask kit for gas protection and steel helmet. The uniform was issued to employees of Lockheed at the air base for such protection as it might give them in case of capture by the enemy. The air base was about three miles long and two miles wide. Its improvements included five residential sections, each consisting of rows of permanent brick buildings, a central heating plant, theater, barber shop, hospital, and many industrial buildings, *79 having steel frames and concrete floors. Roads connecting the various buildings, and sidewalks, were constructed of concrete. All of the services performed by petitioner for Lockheed were rendered as a machinist in permanent buildings at the air base. His services were terminated by Lockheed at the close of June 1, 1944, the reason given in the notice being on account of "Completion of contract - Pursuant to the provisions of supplement 10" to the prime contract. He arrived in the United States about June 20, 1944, and was furnished transportation and traveling expenses to Chicago, where he has resided with his wife to the present time. Petitioner did not handle any of the details for obtaining passports and visas necessary for him to leave and reenter the United States or for his entry, stay and departure from the United Kingdom. During his stay in Northern Ireland, petitioner did not pay any taxes to any foreign Government on the income he received as compensation for services performed for Lockheed at the air base. He performed no actual work for Lockheed within the United States. In an application made on August 11, 1943, for life insurance, the petitioner stated that *80 he contemplated changing his country of residence. The policy issued on October 18, 1943, under the application, provided for limited benefits in the event of death of the insured resulting from certain described aviation and war risks. Prior to the termination of petitioner's services by Lockheed, he was offered a position with the Air Transport Command under Civil Service at a salary lower than the compensation he was then receiving from Lockheed. At that time petitioner was not in good health and felt that he should return to the United States and upon his return seek other employment. Acceptance of the position would have been considered a voluntary termination of employment with Lockheed, and would have resulted in a forfeiture of petitioner's right to compensation for sixty days after the termination of employment and made optional with Lockheed the right of petitioner to transportation to the United States. During the period of his employment overseas, Lockheed deposited 90 per cent of petitioner's salary to his credit in an account in a trust company in Los Angeles and paid the remainder thereof to petitioner at the air base. While in North Ireland petitioner lived in *81 a brick building at the air base, which living quarters, with meals, was furnished without cost to petitioner. All of the supplies used at the air base and food and clothing came from the United States. A short time after his arrival at the air base petitioner was issued a card by the Adjutant General's office of the War Department on which appeared his name, photograph, fingerprints, serial number, rating, and connection with a civilian branch of service of the United States Army. It was necessary for petitioner to display the card whenever he left or entered the air base. When at the air base petitioner wore a uniform of the type worn by members of the army. The uniform included an arm insignia bearing the name of Lockheed. While located at the air base he was prohibited from going to places outside of the base which had been declared out of bounds by the military authorities. Petitioner did not, while in Northern Ireland, make application to become a citizen of Northern Ireland or the United Kingdom. At the suggestion of the Lockheed Aircraft Corporation, prior to July 17, 1943, petitioner made application for a position with the Navy Lockheed Service Center. The application *82 was rejected on July 17, 1943. Lockheed classified $622.71 of petitioner's wages of $3,599.38 in 1944 as compensation for domestic service and deducted therefrom $93.94 for withholding tax. In his income tax return for the calendar year 1944 petitioner reported income of $3,599.38 from Lockheed while employed in Northern Ireland and claimed a refund of $93.34 for tax withheld from his wages. In his determination of the deficiency the respondent held that the compensation of $3,599.38 was not exempt from tax under the provisions of section 116 of the Internal Revenue Code, as amended, and made no deduction from the resulting income tax liability of $529 for withholding tax. The petitioner was not a bona fide resident of a foreign country or countries during the entire taxable year 1944. Opinion Section 116(a)(1) of the Internal Revenue Code, to the extent material here, reads as follows: "In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: "(a) Earned Income from sources without the United States. - "(1) Foreign resident *83 for entire taxable year. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States * * *." The parties disagree on whether petitioner was a bona fide resident of a foreign country and if so, whether the residence was during the entire taxable year. On the first point, respondent cites Arthur J. H. Johnson, 7 T.C. 1040; Michael Downs, 7 T.C. 1053, aff'd. 166 Fed. (2d) 504, and J. Gerber Hoofnel, 7 T.C. 1136, aff'd. 166 Fed. (2d) 504, as controlling our decision. Other cases involving the same question, and facts similar to those here, are Ralph Love, 8 T.C. 400 and Dudley A. Chapin, 9 T.C. 142. The petitioners in the Downs, Hoofnel, Love and Chapin cases were employees of Lockheed in the British Isles or Northern Ireland, and while so engaged, in 1943 continued their employment with Lockheed by entering into new contracts having provisions governing the duration of the employment, *84 the same as the agreement signed by petitioner here. Upon brief, petitioner refers us to evidence which in his opinion serves to distinguish the case from the Downs and Hoofnel cases. We have examined such evidence in detail and are unable to agree with him. His employment was of a temporary nature, due primarily to the termination date of the prime and subcontracts and the right reserved by the United States to terminate the prime contract whenever it considered such action advisable or necessary. Regardless of any intention he might have had to remain in Ireland after the termination of his contract of employment or the length of time he thought he might remain there as an employee of Lockheed, nothing of record shows that his visa would have permitted him to extend his stay beyond the term of his employment. Dudley A. Chapin, supra.A short time before his active service with Lockheed was terminated, petitioner was offered a Civil Service position with the Air Transport Command but declined to accept it on account of financial considerations. No proof was made that he sought other employment. This tends to prove that petitioner had no intention to remain without *85 the United States for a period longer than the term of his employment by Lockheed. The whole record discloses a purpose to go abroad to engage in war work on a temporary basis without any intention to become a bona fide resident of a foreign country. Our decision here on the first point is controlled by the cases, supra, involving a like question. The diligence and thoroughness shown by the petitioner in the trial of the case and the briefing of the issues justifies disposition of the second point, argued by the respondent in the alternative. The petitioner does not deny that he returned to the United States in June 1944, or contend that he was physically absent from this country at any time thereafter during the taxable year. He seeks to satisfy the statute, which requires bona fide residence in a foreign country "during the entire taxable year" by argument that termination of his active services with Lockheed in June 1944 was contrary to the provisions of his contract of employment and therefore a breach of the contract by Lockheed and should be ignored; that his employment overseas continued at least until the completion of the subcontract in November 1946, if not until the *86 date of the hearing herein, on account of the fact that the prime contract is still in full force and effect; that it is immaterial where a person resides, under the circumstances here, when income is not being earned; and that having established a bona fide residence in Northern Ireland, he did not abandon it upon his return to the United States. The contract of employment gave Lockheed the right to terminate the services of petitioner for a number of causes, including whenever the Government's representative considered such action necessary or advisable in the interest of the Government and upon or after the termination of the prime contract by the Government. The Government terminated in February 1944 a portion of the services being rendered by Lockheed as the subcontractor under the prime contract and required, in its interests, the dismissal of employees engaged in such work who were not needed in carrying out other provisions of the contract. Pursuant to the notice of the Government, petitioner's services were terminated in due course, and it does not appear that he ever protested his dismissal to Lockheed as being contrary to his employment contract. The termination notice *87 seems to have been issued under rights agreed upon in the contract. In any event, the contract of employment was terminated in June 1944, and except for the additional wages petitioner became entitled to receive, and transportation rights, Lockheed no longer regarded petitioner as one of its employees. With his dismissal, pursuant or contrary to terms of the contract, went any hope or expectation of petitioner that he would remain in Northern Ireland for a longer period as an employee of Lockheed. The petitioner does no more than advance the unique theory that bona fide residence in a foreign country for a portion of the taxable year, without, as here, income from any other source, satisfies the statute. We know of no rule of law that supports such a result. "Tax exemptions are never lightly to be inferred", Heiner v. Colonial Trust Co., 275 U.S. 232, and statutes exempting income from taxation must be strictly construed. Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46. Here the statute clearly provides bona fide residence throughout the taxable year as a prerequisite to the exemption. If a bona fide residence had been established, as petitioner's *88 theory assumes, nothing here is contrary to the idea that it was abandoned when petitioner left for the United States. The evidence contains no proof of any intention to return to Northern Ireland at any time thereafter for any purpose. The brief of petitioner contains some suggestion that he returned to the United States for a vacation on account of his physical condition and/or the business of seeking other employment. Certainly no more than the period of sixty days, during which petitioner remained on Lockheed's payroll, could be regarded as a vacation from his employment. Thereafter, he had no status as an employee of Lockheed. Nothing of record discloses that any effort was made after his return to the United States to obtain other employment in Northern Ireland or any other foreign country, or, in fact, that he had any intention to seek such employment. Respondent admits that Lockheed withheld tax in the amount of $93.34 on the compensation paid to petitioner. Petitioner is entitled to a credit for the amount so withheld. Section 35, Internal Revenue Code. Decision will be entered under Rule 50.