Johnnie R. and Ethel Vance v. Commissioner.
Vance v. Commissioner
Docket No. 31794.
United States Tax Court
1953 Tax Ct. Memo LEXIS 138; 12 T.C.M. (CCH) 966; T.C.M. (RIA) 53291; August 27, 1953
Robert L. Sonfield, Esq., Esperson Building, Houston, Tex., for the petitioners. Frank C. Allen, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioners for the calendar years 1948 and 1949 in the respective amounts of $845.52 and $615.34, and an addition to tax for 1948 of $213.63 for failure to file their income tax return for that year within the time prescribed by the statute. The issues are whether petitioner Johnnie R. Vance was a bona fide resident of Kuwait, on the Persian Gulf, within the meaning of section 116 (a) (1) of the Internal Revenue Code, and whether the failure to file the 1948 return within the time prescribed by statute was due to reasonable cause. Findings of Fact Petitioners are husband and wife, and filed joint income tax returns for the years 1948 and 1949 with the collector of internal revenue for the first district of Texas on December 19, 1949. Johnnie R. Vance will sometimes be referred to as the petitioner. Petitioner is a native born citizen of the United *140 States and of the state of Texas. Prior to December 18, 1947, he and his wife had lived in Texas, and, except for his foreign service with the United States Armed Forces, neither of them had ever been abroad. Petitioner is a millwright by trade, and prior to December 18, 1947, he had worked at this trade in and around Houston, Texas. In the performance of his duties as millwright petitioner set up, leveled, and aligned heavy and light machinery. During the year 1946 he was employed by five different concerns and the gross community income of himself and his wife was $3,116.35. During the year 1947 he was employed by thirteen different concerns and the gross community income was $3,783.81. On December 16, 1947, petitioner entered into an employment contract with Bechtel International Corporation, hereinafter referred to as the company. The contract was accepted by the company on December 16, 1947, in San Francisco, California, and made effective beginning December 19, 1947. Pursuant to the terms of the agreement the rights of the parties thereto were to be governed by the laws of the state of California. Under the employment contract the petitioner was hired to perform the duties *141 of millwright for the company on construction or other work in Saudi Arabia, or other locations in the Near and Middle East. The terms of the contract pertinent to the issue here provided: "Section 2. TERM OF AGREEMENT. "The term of this Employment Agreement shall be the period during which the Contractor desires the services of the Employee in connection with construction or other work in Saudi Arabia or other location in the Near or Middle East; provided, that after eighteen (18) months continuous employment from date of this Employment Agreement, the Employee may terminate his employment hereunder by giving the Contractor written notice specifying the date on which he desires to terminate his employment which date shall not be less than fifteen (15) days after the date of delivery of notice to the Contractor. "Section 6. JOBSITE FACILITIES. "(a) Board, lodging and medical services will be furnished by the Contractor at site of work without cost to the Employee. Dental care will be furnished in case of industrial accident only, and at all other times the Employee will be charged for dental service, if available. "The Employee will be charged for laundry service at established *142 rates, when available. When commercial laundry services are not available, the Contractor will permit the Employee to use any laundry facilities or equipment on hand. "(b) All employees shall use the facilities in regard to board, lodging and medical services furnished by Contractor or Owner. Section 12. WORKING CONDITIONS. * * *
"(c) The Employee shall comply with all laws and regulations, applicable at the site of the work and the vicinity thereof, and such other rules and regulations as the Contractor may establish from time to time with respect to the personnel employed by the Contractor. The Employee agrees to work and live in harmony with his co-workers employed on the work, and at all times to conduct himself in an orderly manner, with due regard to the comfort and convenience of his co-workers, and to conform to reasonable standards of personal cleanliness. Employees shall not engage, directly or indirectly, in any other employment, service or business whatever, nor shall he take part in local politics. "Section 19. CERTIFICATION BY EMPLOYEE. "The Employee certifies to the Contractor that he has read the foregoing Employment Agreement and that he fully understands *143 its terms and conditions, and further certifies that the foregoing terms and conditions constitute his entire agreement with the Contractor, and that no promises or understandings have been made other than those stated above; and it is specifically agreed by the parties hereto that this Employment Agreement shall be subject to modification only by written instrument signed by both the Contractor and the Employee." The employment contract entered into between petitioner and the company on December 16, 1947, was the only contract ever entered into between the parties. On November 17, 1947, at Houston, Texas, petitioner made application for a passport with the Department of State of the United States. In the passport application he stated, among other things, that he proposed to stay abroad for eighteen months and the purpose of his trip was for business. Pursuant to the terms of the contract he departed the United States on December 18, 1947, and arrived in Kuwait on December 22, 1947. After his arrival in Kuwait petitioner filed an application for registration with the Consulate of the United States at Basra, Iraq, wherein he stated, among other things, that he intended to return *144 to the United States by July 11, 1949, to reside permanently. At Kuwait petitioner proceeded to perform the work for which he was hired by the company, namely, working as a millwright in the construction end of the project. The project consisted of constructing several oil stations to pump oil from the desert and an all-steel oil well jetty at the mouth of the Persian Gulf. Petitioner's wife, who remained in Houston, was ill at the time petitioner went to Kuwait in December of 1947, but the nature of her illness was not known to him. On or about September 14, 1949, he received word that his wife was to undergo a serious operation, whereupon he procured a ninety-day leave from the company and flew home, arriving in the United States on September 19, 1949. His wife underwent a series of three operations subsequent to his return and he was, therefore, unable to return to Kuwait within the ninety-day leave period. After his return to the United States petitioner was informed by a doctor that he should have an appendectomy, but due to his wife's illness, he did not undergo the operation. When his wife recovered sufficiently so that he could return to his overseas job, he applied for *145 a position with the company as a general foreman, but was unable to pass the physical examination. He has not been abroad since his return to the United States in September 1949. Petitioner was not a bona fide resident of Kuwait during the years 1948 and 1949. Petitioners have not shown that the failure to file their income tax return for the calendar year 1948 within the time prescribed by statute was due to reasonable cause and not to willful neglect. Opinion The first question is whether petitioner was a bona fide resident of Kuwait during 1948 and 1949 within the meaning of section 116 (a) (1) of the Internal Revenue Code. [1] If, as petitioner contends, he was a bona fide resident of Kuwait during those years, the compensation he received for his services as a millwright is exempt from income tax. If, on the other hand, the contention of the respondent is correct and the petitioner was not a bona fide resident of Kuwait, he is taxable on such income. *146 Petitioner entered into an employment agreement with Bechtel International Corporation on December 16, 1947. By the terms of this agreement, he was to work as a millwright, at $400 a month, in Saudi Arabia or other location in the Near and Middle East. He was to live in barrackstype accommodations at the job site, eat in a mess hall and accept the medical services provided by the company. The term of employment was to be "the period during which the Contractor desires the services of the Employee in connection with construction or other work in Saudi Arabia or other location in the Near or Middle East; provided, that after eighteen (18) months continuous employment from date of this Employment Agreement, the Employee may terminate his employment." In his application for passport filed at Houston, Texas, the petitioner, in answer to questions appearing thereon, stated that he intended to be abroad for "eighteen months" and that the purpose of his travel was "business." When, in the light of his contention here, he was asked why he had made that statement, he responded, "Well, at that time, the period of contract - I did not know that I could remain afterwards until I got over there, *147 on maintenance." In applying for registration with the Consulate of the United States at Basra, Iraq, he stated that he intended to return to the United States "July 11, 1949," to reside "permanently," and there is no showing of record that he ever sought to change the tenor or purport of his registration as originally made. His explanation was that the company took care of those things for the employees, but, so far as appears, he never asked the company to take such steps in his behalf. It is argued that petitioner's intent to become a bona fide resident of Kuwait is shown by the fact that after his wife recovered from her illness he applied for a job as general foreman and would have been accepted but for his failure to pass the physical examination for overseas duty. The question here, however, is not whether after his wife's recovery petitioner had a prospective intent of becoming a bona fide resident of Kuwait at some future time, but whether he had such residence in 1948 and 1949. The material facts in the instant case are substantially the same as those dealt with by the United States Court of Appeals for the Tenth Circuit, in Jones v. Kyle, 190 Fed. (2d) 353, *148 wherein the taxpayer Kyle was employed by an oil company as a pipe fitter in Saudi Arabia. We regard the principles there laid down as controlling here, and conclude that the petitioner was not a bona fide resident of Kuwait during 1948 and 1949, within the meaning of section 116 (a) of the Interal Revenue Code, as amended by section 148 (a) of the Revenue Act of 1942 and section 107 (b) of the Revenue Act of 1943. See and compare Michael Downs, 7 T.C. 1053, affd. 166 Fed. (2d) 504, and Arthur J. H. Johnson, 7 T.C. 1040. In its opinion in Jones v. Kyle, the court has pointed out that Swenson v. Thomas, 164 Fed. (2d) 783, and Myers v. Commissioner, 180 Fed. (2d) 969, which were decided for the taxpayers, were substantially different in respect to decisive facts. Similarly, White v. Hofferbert, 88 Fed. Supp. 457, and Yaross v. Kraemer, 83 Fed. Supp. 411, cited and relied on by petitioners, are factually distinguishable. Petitioner argues that the above interpretation of section 116 (a) of the Code "is contrary to the legislative intent which brought about clarification of the section" in the *149 Revenue Act of 1951. In that connection, he quotes section 116 (a) (2)[2] as enacted by the 1951 Act, which provides an exemption from income tax for individual citizens who are "present" in a foreign country during at least 510 days out of a period of eighteen consecutive months. The difficulty with that argument is that Congress specifically made the said amendment applicable only to taxable years beginning after December 31, 1950. Obviously it regarded section 116 (a) (2) as new legislation, and not a mere clarification of the law as it existed prior thereto. *150 The respondent also determined an addition to tax, under section 291 (a) of the Internal Revenue Code, for petitioners' failure to file their 1948 return within the time prescribed by statute. In the petition it is alleged that the return was not filed within the prescribed time because Vance was advised by his employer that his income was exempt. This allegation was denied by the respondent in his answer, and no proof was offered by the petitioners with respect thereto. Such being the state of the record, the determination of the addition to tax by the respondent is sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 116. EXCLUSIONS FROM GROSS INCOME. In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: (a) Earned Income From Sources Without the United States. - (1) Foreign Resident For Entire Taxable Year. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3); but such individuals shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.↩
2. SEC. 116. EXCLUSIONS FROM GROSS INCOME. In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: (a) Earned Income From Sources Without the United States. - * * *
(2) Presence in Foreign Country for 17 Months. - In the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in paragraph (3)) attributable to such period; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this paragraph.↩