Arthur O. Brown v. Commissioner.
Brown v. Commissioner
Docket No. 30941.
United States Tax Court
1953 Tax Ct. Memo LEXIS 84; 12 T.C.M. (CCH) 1172; T.C.M. (RIA) 53334; October 22, 1953
*84 United States citizen employed abroad, held, on facts, not a "bona fide resident of a foreign country" so as to be exempt from United States income tax under Sec. 116 (a) (1), Internal Revenue Code. H. C. Baughman, Esq., and A. Barlow Ferguson, Esq., for the petitioner. John H. Welch, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined that deficiencies exist in petitioner's income taxes for the years 1947 and 1948 in amounts of $1,094.40 and $1,085.74, respectively. The petitioner excluded the entire income earned by him in those years claiming that under section 116 (a) of the Internal Revenue Code he was a bona fide resident of Afghanistan. The *85 single question to be determined is factual, i.e., whether petitioner, in 1947 and 1948, was a "bona fide resident" of Afghanistan within the meaning of section 116 (a). Findings of Fact The petitioner is, and at all times material hereto has been, a citizen of the United States. He filed income tax returns for the years 1946, 1947 and 1948 with the collector for the district of Oregon showing his address as Aloha, Oregon. At the time of the hearing, he was living in Vancouver, British Columbia, where he was employed on a construction project. The petitioner is a civil engineer by profession with a degree from Washington State College granted in 1937. Following graduation, he worked three years for the United States Bureau of Reclamation; then, for the Navy Department; then, for the Willamette Iron & Steel Company and, finally, for short periods for two other employers. All these positions were in the United States. In September, 1946, petitioner signed a two-year contract of employment with Morrison-Knudson Afghanistan, Inc., to work on a construction project. The contract indicates that petitioner was hired as a draftsman and that his address at the time of hiring was Portland, *86 Oregon. The contract containing the following pertinent terms: * * * "Employer is engaged in the performance of a construction contract in the KINGDOM OF AFGHANISTAN and desires to retain the services of Employee for work in connection with said construction contract. * * *
"Employment Subject to Construction Contract "Employer employs Employee for certain services in the construction work to be performed by Employer under said construction contract and said employment is in all respects subject to the provisions of said construction contract and the reasonable requirements and interpretations thereof. "Place of Employment "The services of Employee shall be performed in Afghanistan at any one or more of the places therein which may be designated by Employer, or, at Employer's option, at such other place or places outside said country which Employer may designate in connection with the performance of said construction project. * * *
"Period of Employment "The period of services provided for by this Contract shall be twenty-four (24) months at the site of the work after Employee's arrival at such site, provided that in the event Employer's construction contract *87 is completed or terminated before the expiration of said period, this Contract shall thereupon terminate, and Employer shall only be obligated to pay Employee for services rendered to the date of such termination or completion * * *." The contract also provided that upon satisfactory completion of the two-year term, Morrison-Knudsen would pay petitioner's travel expenses back to Portland, Oregon. Also, in the contract petitioner arranged to have most of his salary deposited in a Portland bank in his wife's account. In his passport application dated September 20, 1946, petitioner listed his permanent address as Aloha, Oregon, and stated that he intended to visit "Afghanistan and countries enroute" as an "Employee of Morrison-Knudsen" and that he intended to return to the United States within two years. Petitioner left the United States in the first week of October, 1946, and arrived at his destination in Afghanistan on October 11, 1946. He carried with him personal baggage containing clothes and some books. The rest of his personal property was left behind with his wife and his mother and father. This was the first time he had left the United States. On arrival, petitioner lived *88 in a hotel in quarters provided by his employer. In the early part of 1947, family housing units had been built for Morrison-Knudsen employees, and petitioner's wife sailed to join him in March, 1947. Her passport application, dated January 31, 1947, listed her permanent residence as Aloha, Oregon, and stated that the purpose of her trip was to join her husband and that she intended to return within two years. Petitioner had obtained permission from his employer to bring his wife to Afghanistan. Petitioner and his wife occupied one of the company-built houses for the remainder of 1947, which was located at the site of petitioner's employment in Girshks. The couple obtained their staple foodstuffs through a company commissary; fresh meats and vegetables were available through native markets. The house was partially furnished by the company and petitioner was charged rent for it. The remainder of the furnishings, including a kitchen range, refrigerator, utensils, linens and bedding were brought by petitioner's wife from the United States when she joined him. Such of the Brown's furnishings which she did not take were stored with Mrs. Brown's family. In the first part of 1948, petitioner *89 moved to a new job-site at Kabul and occupied a house rented from a native Afghan through his employer. This house was also partially furnished but petitioner supplied his own kitchen range, refrigerator, bedding and linens. During the period he lived in Afghanistan, petitioner participated in the American or English-speaking community of other Morrison-Knudsen employees. Effective and continuous social intercourse with the native community was limited because of local religious barriers. He did take courses in Persian, one of the languages of Afghanistan, and visited some native homes socially. He once attended a marriage ceremony. On or about November 15, 1948, petitioner left Afghanistan with his wife and sailed for the United States. He indicated to his employer that, following a vacation in the United States, he would like to return to Afghanistan, but he had not signed a new contract and was not otherwise obligated to return. Petitioner sold some of his household furnishings when he left for the United States. He retained his refrigerator and some books and left those articles in Afghanistan to await his return. Petitioner and his wife arrived in the United States on or *90 about January 6, 1949. Following a vacation, petitioner and his wife made arrangements to return to Afghanistan in April, 1949. At this point, however, Morrison-Knudsen advised petitioner that no additional personnel were being sent over for the company. In June, 1949, petitioner contracted with another employer, International Bechtel, as an engineer for a position in the Kingdom of Kuwait. He arrived at that job in July, 1949. In January, 1950, he moved to another job-site in Tripoli, Lebanon, and remained there until February, 1951, when he returned to the United States and worked in California for two months before going to British Columbia, Canada, for the Bechtel Company by whom he was employed at the time of the hearing. During the years 1947 and 1948, petitioner paid no income taxes to the Afghanistan Government. Petitioner was not a bona fide resident of Afghanistan during 1947 and 1948. Opinion ARUNDELL, Judge: This case presents the single question of whether petitioner in the years 1947 and 1948 was a bona fide resident of Afghanistan within the meaning of section 116 (a) (1) * of the Internal Revenue Code. *91 We think that this case belongs with that line of cases beginning with Arthur J. H. Johnson, 7 T.C. 1040, and Michael Downs, 7 T.C. 1053, affd. (C.A. 9) 166 Fed. (2d) 504, certiorari denied 334 U.S. 832, in which we have consistently held that American technicians who were temporarily abroad, engaged in war work or construction projects, did not acquire a bona fide residence in a foreign country within the meaning of section 116 (a) during their sojourns. In the Johnson case, supra, we reviewed extensively the legislative history of section 116 (a) and particularly the provisions added by the 1942 amendments to the Internal Revenue Code which are pertinent here. We noted there that prior to the 1942 amendments, section 116 (a) allowed citizens who were non-residents for six months or longer to exclude income from sources outside the United States from their gross income. Decisions and rulings under this provision held that mere physical absence from the country was sufficient to establish non-residence. However, in the Congressional comments on the 1942 Act, it is evident that this provision was considered too liberal and productive *92 of abuse and discrimination. (H. Rept. No. 2333, 77th Cong., 2d Sess., 1942-2 C.B. 412; S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C.B. 548-9.) While there was sentiment for eliminating the provision entirely, the compromise position which prevailed changed the language of section 116 (a) to require that a citizen be a "bona fide resident" of a foreign country for an entire year before the benefit of the section could be claimed. The criteria for determining a bona fide foreign residence were to be the same as those for determining whether an alien was a resident of this country for tax purposes. In the Johnson case, and decisions following it, we have said that a citizen must be more than a transient in a foreign country to claim the benefit of section 116 (a). Our decisions indicate that presence in a foreign country for a definite purpose which, by its nature, can be promptly accomplished, generally does not result in the establishment of a bona fide residence within the meaning of the amended provisions of section 116 (a). However, presence for a purpose that requires an indefinite and extended stay, which is combined with an intention to make a home *93 temporarily in a foreign country, will result usually in the establishment of a bona fide residence. In the last analysis, it is the facts of each case which determine largely the taxpayer's intentions with respect to his foreign stay. Relying on Arthur J. H. Johnson, and Michael Downs, supra, this Court recently held, in Ernest Rudolf Hertig, 19 T.C. 109, that one of petitioner's contemporaries, employed by the same company and under an identical contract, had not become a bona fide resident of Afghanistan within the meaning of section 116 (a). The period in controversy, 1947 and 1948, was the same as the years involved in this case. In Meso v. Viley, 102 Fed. Supp. 173, where the same employer and contract were involved, the United States District Court for the District of Idaho held that the taxpayer had not become a bona fide resident of Afghanistan. There are some differences between Hertig's and Meso's situation and that of petitioner but none that we think sufficiently important to vary the result. Petitioner was married and had his wife with him for most of the time, while Hertig and Meso were unmarried. Petitioner and his wife occupied *94 a house which they furnished in part with some modern equipment such as an electric refrigerator and range. But Hertig with a companion likewise occupied a house which the two furnished with the same type of equipment. Petitioner here had no record of foreign employment prior to the years he spent in Afghanistan. This job was his first outside of the United States. It appears to us that petitioner went abroad originally to work for a specified period of two years and then to return to the United States. True to that intention he did return. While he left again to work on other projects, we do not think he left with any different intention than he had when he first went to Afghanistan, that is, to work for a definite period until a specific project was completed and then to return to the United States. We cannot find that petitioner established a bona fide residence in Afghanistan during 1947 or 1948. Nor do we think that our opinion in Audio Gray Harvey, 10 T.C. 183, on which petitioner relies, is helpful. The facts in the Harvey case are clearly distinguishable. Harvey had been employed abroad for many years prior to those in issue. He had a record of long foreign *95 service. In view of our finding that petitioner was not a bona fide resident of Afghanistan, it is unnecessary to consider separately the other requirements for the application of section 116 (a) or petitioner's claim with respect to the earnings in 1948 under section 116 (a) (2). Decision will be entered under Rule 50. Footnotes
*. SEC. 116. EXCLUSIONS FROM GROSS INCOME. In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter: (a) Earned Income From Sources Without the United States. - (1) Foreign resident for entire taxable year. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3); but such individuals shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.↩